UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| JOSUE CRUZ, : | |
|     Plaintiff, : | |
| : | |
| v. : | 3:21cv49 (MPS) |
| : | |
| DR. NAQVI, et al, : | |
|     Defendants. | |

## INITIAL REVIEW ORDER

On January 13, 2021, the *pro se* plaintiff, Josue Cruz, an unsentenced inmate[1] in the custody of the Connecticut Department of Correction ("DOC"), filed this civil rights complaint pursuant to 42 U.S.C. § 1983 for violation of his constitutional rights based on the alleged medical indifference of DOC staff members at MacDougall-Walker Correctional Institution ("MacDougall"): Dr. Naqvi, RN Shanya, RN Gwen, Rose W., Nurse Supervisor Furtick, and Unit Manager Dow. ECF No. 1. The Court construes Cruz's complaint as alleging Fourteenth Amendment violations against defendants in their individual capacities for damages.[2]

For the following reasons, Cruz's Fourteenth Amendment medical indifference claims may proceed against Dr. Naqvi, RN Shanya, Rose W., and Nurse Supervisor Furtick in their individual capacities for damages.

I.    **STANDARD OF REVIEW**

---

[1] The Court may "take judicial notice of relevant matters of public record." *Giraldo v. Kessler*, 694 F.3d 161, 164 (2d Cir. 2012). At this writing, the DOC website shows that Cruz is an unsentenced inmate at the Walker building of MacDougall-Walker Correction Institution. http://www.ctinmateinfo.state.ct.us/detailsupv.asp?id_inmt_num=279366.

[2] Cruz has not provided a specific request for relief.

1

Pursuant to 28 U.S.C. § 1915A(b), the Court must review prisoner civil complaints against governmental actors and "dismiss ... any portion of [a] complaint [that] is frivolous, malicious, or fails to state a claim upon which relief may be granted," or that "seeks monetary relief from a defendant who is immune from such relief." *Id.* In undertaking this review, the Court is obligated to "construe" complaints "liberally and interpret[ ] [them] to raise the strongest arguments that they suggest." *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (internal quotation marks and citation omitted).

Although detailed allegations are not required under Rule 8(a) of the Federal Rules of Civil Procedure, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when a plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). A complaint that includes only " 'labels and conclusions,' 'a formulaic recitation of the elements of a cause of action' or 'naked assertion[s]' devoid of 'further factual enhancement,'" does not meet the facial plausibility standard. *Id.* (quoting *Twombly*, 550 U.S. at 555, 557).

## II.     ALLEGATIONS

Cruz's allegations are difficult to discern in places. To the best of its ability, the court recites the following factual allegations, which are all considered to be true for purposes of this review.

On September 30, 2020, Cruz showed Dr. Naqvi an infection that he had on the toe of his left foot due to an ingrown toenail. ECF No. 1 at ¶ 1. However, Dr. Naqvi did not provide assistance for this condition (which was very bad) for two and a half months. *Id.* Cruz made requests for

treatment to both Dr. Naqvi and RN Shanya, but neither provided him with treatment. *See* ECF No. 1-1 at pp. 5-7, 15-16, 21-23. Dr. Naqvi and RN Shanya failed to provide him with a change of dressing or an antibiotic, and they failed to put him on sick call. ECF No. 1 at ¶ 2.

During the next month, Cruz's infection from his ingrown toenail got worse; his toe became swollen, purple, and painful. *Id.* at ¶ 3.

On October 4, 2020, after Cruz complained to the medical unit that he would call the captain if they did not see him, Nurse John Doe looked at his toenail but did not provide him with a dressing change, antibiotic or an appointment with Dr. Naqvi. *Id.* at ¶ 4.

Cruz spoke to Captain Dow about medical staff's failure to call him for sick call and the nurses not doing their job. *Id.* at ¶ 5, ECF No. 1-1 at p. 14. She responded that medical staff do their own thing. ECF No. 1 at ¶ 5.

Cruz was in a lot of pain for weeks and months due to his ankle and swollen toe that had an infection and was draining puss. *Id.* at ¶ 6. Cruz could not stand up for longer than ten minutes or put on his shoes because of his infected swollen foot. *Id.* at ¶ 7.

Cruz complained to Nurse Supervisor Furtick, Rose W. (who was allegedly involved with Health Remedies), RCOO Shea, and APRN Sarah. *Id.* at ¶ 8. However, Cruz still did not receive medical treatment from Naqvi. *Id.* at ¶ 9; ECF No. 1-1 at 18, 21.

After two and half months, APRN Sarah and Nurse Diana saw his foot in such "bad condition" that he could have lost a toe. ECF No. at ¶ 9. They put Cruz on the list to see Dr. Naqvi, but Dr. Naqvi still would not see Cruz. *Id.* at ¶ 10.

Almost three months later, Nurse Diana went to Dr. Naqvi's office to tell him that he had to take care of Cruz's foot immediately. *Id.* at ¶ 10. Dr. Naqvi eventually did so, but Cruz now has another infection on the same foot and nothing has been done. *Id.*

## DISCUSSION

The standard of reviewing Cruz's claim of deliberate indifference to his medical needs turns on whether he is a convicted prisoner or pretrial detainee. Claims of convicted prisoners are analyzed under the Eighth Amendments, while claims of pretrial detainees are analyzed under the Due Process Clause of the Fourteenth Amendment. *See Darnell v. Pineiro*, 849 F.3d 17, 29-34 n.9 (2d Cir. 2017); *Lloyd v. City of New York*, 246 F. Supp. 3d 704, 717-18 (S.D.N.Y. 2017); *see also Bell v. Wolfish,* 441 U.S. 520, 535 n.16 (1979) ("A sentenced inmate … may be punished, although that punishment may not be 'cruel and unusual' under the Eighth Amendment."). Because Cruz was a pretrial detainee at the time relevant to this complaint, his claims will be analyzed under the Due Process Clause of the Fourteenth Amendment.

Under the Fourteenth Amendment analysis, the "serious medical need standard contemplates a condition of urgency such as one that may produce death, degeneration, or extreme pain." *Charles v. Orange Cnty*, 925 F.3d 73, 86 (2d Cir. 2019). To determine whether a medical need is sufficiently serious to be cognizable as a basis for a constitutional claim for deprivation of medical care, the court should "consider factors such as whether a reasonable doctor or patient would find the injury important and worthy of treatment, whether the medical condition significantly affects the individual's daily activities, and whether the illness or injury inflicts chronic and substantial pain." *Charles*, 925 F.3d at 86. "In most cases, the actual medical

consequences that flow from the denial of care are highly relevant in determining whether the denial of treatment subjected the detainee to a significant risk of serious harm." *Id.* at 86.

The pretrial detainee must also "prove that the defendant-official acted intentionally to impose the alleged condition, or recklessly failed to act with reasonable care to mitigate the risk that the condition posed to the pretrial detainee even though the defendant-official knew, or should have known, that the condition posed an excessive risk to health or safety." *Darnell*, 849 F.3d at 35.

"It is well settled in this Circuit that 'personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.'" *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (quoting *Moffitt v. Town of Brookfield*, 950 F.2d 880, 885 (2d Cir. 1991)). The Second Circuit has defined "personal involvement" to mean direct participation, such as "personal participation by one who has knowledge of the facts that rendered the conduct illegal," or indirect participation, such as "ordering or helping others to do the unlawful acts." *Provost v. City of Newburgh*, 262 F.3d 146, 155 (2d Cir. 2001) (citation omitted). Thus, to "hold a state official liable under § 1983, a plaintiff must plead and prove the elements of the underlying constitutional violation directly against the official without relying on a special test for supervisory liability." *Tangreti v. Bachman*, 983 F.3d 609, 620 (2d Cir. 2020) (a constitutional violation "must be established against the supervisory official directly.").

For purposes of this initial review, the court considers Cruz to have plausibly alleged that he suffered from an objectively serious medical condition due to an infection that could have caused him to lose a toe. ECF No. 1 at ¶ 9; *see Dooley v. Cook*, 2020 WL 6395576, at *8 (D. Conn. 2020) (allegations that a plaintiff "experienced pain and increased damage due to the

5

inadequate and delayed medical treatment for his foot problems" satisfy the objective element on initial review).

With regard to the defendants' state of mind, Cruz has alleged that he sought medical assistance[3] for his severe pain from defendants Nurse Shanya, Nurse Supervisor Furtick and Rose W., but his allegations indicate that they did not provide or facilitate any medical assistance. *Id.* at ¶¶ 8-9; *See* ECF No. 1-1 at 5, 7, 18, 21. He alleges further that Dr. Naqvi failed to see him for almost three months after APRN Sarah and Nurse Diana put him on Dr. Naqvi's list for medical attention due to the severity of Cruz's infection. ECF No. 1 at ¶¶ 9-10. For initial pleading purposes, Cruz's allegations are sufficient to raise a plausible suggestion that Defendants Dr. Naqvi, Nurse Shanya, Nurse Supervisor Furtick, and Rose W. acted with indifference to his serious medical needs.

Cruz has not, however, sufficiently alleged that Captain Dow acted intentionally or recklessly by failing to mitigate the risk of harm posed by Cruz's infected toenail. Cruz alleges that he complained about the medical staff to Captain Dow, but he does not allege that he asked Captain Dow to seek medical attention for him or that Captain Dow refused or ignored his request. *Id.* at ¶ 5. No allegations suggest that Captain Dow acted with indifference or failed to mitigate the risk of harm to Cruz due to his infection.

Cruz's complaint has also failed to allege any allegations indicating the personal involvement of Nurse Gwen (who is named in the case caption) in the alleged Fourteenth Amendment claim. Cruz has attached inmate requests indicating that he requested medical

---

[3] He alleges that he wrote a complaint to Furtick, Rose W., RCOO Shea and APRN Sarah. *Id.* at ¶ 8. The court notes that RCOO Shea and APRN Sarah are not named in the case caption and are not considered to be defendants in this action. *See* Fed. R. Civ. P. Rule 10(a) (requiring that all defendants be listed in the case caption).

treatment from Nurse Gwen but she refused to provide any treatment or provided inadequate treatment. ECF No. 1-1 at 2, 9, 11, 12, 19. However, under the Federal Rules of Civil Procedure, a complaint must be a plain and concise statement of facts constituting a claim recognized by law, and therefore Cruz may not file exhibits in lieu of alleging facts in the complaint against Nurse Gwen. *See* Fed. R. Civ. P. 8.

Accordingly, the Fourteenth Amendment claims Captain Dow and RN Gwen will be dismissed as not plausible.

### IV.   ORDERS

The Court enters the following orders:

(1) The case shall proceed on Cruz's Fourteenth Amendment medical indifference claims against Dr. Naqvi, RN Supervisor Furtick, RN Shanya, and Rose W. in their individual capacities for damages. The claims against Captain Dow and RN Gwen are DISMISSED without prejudice.

Within **thirty (30) days** from the date of this order, Cruz may file an amended complaint to correct the deficiencies identified in this ruling. Plaintiff is advised that any amended complaint will completely replace the prior complaint in the action, and that no portion of any prior complaint shall be incorporated into his amended complaint by reference.

(2) The clerk shall verify the current work address of Dr. Naqvi, RN Supervisor Furtick, RN Shanya, and Rose W. with the DOC Office of Legal Affairs, mail a waiver of service of process request packet containing the complaint to them at their confirmed addresses within **twenty-one (21) days** of this Order, and report on the status of the waiver request on the **thirty-fifth (35th) day** after mailing. If a defendant fails to return the waiver request, the clerk shall make arrangements for in-person individual capacity service by the U.S. Marshals Service on

that defendant, and that defendant shall be required to pay the costs of such service in accordance with Federal Rule of Civil Procedure 4(d).

(3) The clerk shall send a courtesy copy of the complaint and this Order to the DOC Office of Legal Affairs and the Office of the Attorney General.

(4) Defendants shall file their response to the complaint, either an answer or motion to dismiss, within **sixty (60) days** from the date the notice of lawsuit and waiver of service of summons forms are mailed to them. If Defendants choose to file an answer, Defendants shall admit or deny the allegations and respond to the cognizable claims recited above. Defendants may also include any and all additional defenses permitted by the Federal Rules.

(5) Discovery, according to Federal Rules of Civil Procedure 26-37, shall be completed within **six months (180 days)** from the date of this Order. Discovery requests need not be filed with the Court.

(6) The parties must comply with the District of Connecticut "Standing Order Re: Initial Discovery Disclosures," which will be sent to both parties by the Court. The Order can also be found at http://ctd.uscourts.gov/administrative-standing-orders.

(7) All motions for summary judgment shall be filed within **seven months (210 days)** from the date of this Order.

(8) According to Local Civil Rule 7(a), a nonmoving party must respond to a dispositive motion within **twenty-one (21) days** of the date the motion was filed. If no response is filed, or the response is not timely, the dispositive motion can be granted absent objection.

(9) If the plaintiff changes his address at any time during the litigation of this case, Local Court Rule 83.1(c)2 provides that he MUST notify the Court. Failure to do so can result in

the dismissal of the case. The plaintiff must give notice of a new address even if he is incarcerated. He should write "PLEASE NOTE MY NEW ADDRESS" on the notice. It is not enough to just put the new address on a letter without indicating that it is a new address. If the plaintiff has more than one pending case, he should indicate all of the case numbers in the notification of change of address. He should also notify the defendants or defense counsel of his new address.

(10) Plaintiff shall utilize the Prisoner Efiling Program when filing documents with the court. The plaintiff is advised that the Program may be used only to file documents with the court. Local court rules provide that discovery requests are not filed with the court. D. Conn. L. Civ. R. 5(f). Therefore, discovery requests must be served on defendant's counsel by regular mail.

_____/s/_____
Michael P. Shea
United States District Judge

**SO ORDERED** this 14th day of April 2021, at Hartford, Connecticut.