## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

```
---------------------------X
                           :
JOSUE CRUZ                  :    Civil No. 3:21CV00049(SALM)
                           :
v.                         :
                           :
DR. NAQVI, R.N. SHANYA,    :
ROSE W., and NURSE         :
SUPERVISOR FURTICK         :    August 19, 2022
                           :
---------------------------X
```

### RULING ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [DOC. #30]

Self-represented plaintiff Josue Cruz ("Cruz" or "plaintiff"), a pretrial detainee currently held at MacDougall-Walker Correctional Institution,[1] brings this action relating to events occurring during his detention in the custody of the Connecticut Department of Correction ("DOC"). After initial review, four defendants remain: Dr. Naqvi, Nurse Graham,[2] Nurse

---

[1] The Court may take judicial notice of matters of public record. See, e.g., Mangiafico v. Blumenthal, 471 F.3d 391, 398 (2d Cir. 2006); United States v. Rivera, 466 F. Supp. 3d 310, 313 (D. Conn. 2020) (taking judicial notice of BOP inmate location information); Ligon v. Doherty, 208 F. Supp. 2d 384, 386 (E.D.N.Y. 2002) (taking judicial notice of state prison website inmate location information). The Court takes judicial notice of the Connecticut DOC website, which reflects that Cruz is an unsentenced pretrial detainee. See http://www.ctinmateinfo.state.ct.us/detailsupv.asp?id_inmt_num=279366 (last visited August 19, 2022).

[2] Plaintiff refers to Nurse Graham as "R.N. Shanya" but her full name is Shanya Graham. See Doc. #30-2 at 2.

Walker,[3] and Supervising Nurse Furtick. All defendants move for summary judgment on the grounds that (1) "plaintiff failed to exhaust his administrative remedies, and his claims are therefore barred by the Prison Litigation Reform Act[,]" and (2) "plaintiff fails to present sufficient evidence to support a claim that any defendant was deliberately indifferent to his medical needs." Doc. #30-1 at 1. For the reasons set forth below, defendants' Motion for Summary Judgment [**Doc. #30**] is **GRANTED**.

I.   <u>**PROCEDURAL BACKGROUND**</u>

Plaintiff brought this action on January 13, 2021. <u>See</u> Doc. #1. On that same date, plaintiff filed a motion for leave to proceed <u>in</u> <u>forma</u> <u>pauperis</u>, <u>see</u> Doc. #2, which was granted. <u>See</u> Doc. #9. On April 14, 2021, Judge Michael P. Shea, the then-presiding Judge, conducted an initial review of the Complaint. <u>See</u> Doc. #10. Judge Shea permitted plaintiff's Fourteenth Amendment deliberate indifference to serious medical needs claim to proceed against defendants Dr. Naqvi, Nurse Supervisor Furtick, Nurse Graham, and Nurse Walker, in their individual capacities for damages. Specifically, the Fourteenth Amendment claim was permitted to proceed based on plaintiff's claim that these defendants failed to treat him for "an infection that he

---

[3] Plaintiff refers to Nurse Walker as "Rose W." but her full name is Rose Walker. <u>See</u> Doc. #30-2 at 3.

had on the toe of his left foot due to an ingrown toenail." Doc. #10 at 2.

On June 21, 2021, defendants filed an Answer to the Complaint. See Doc. #19.

This case was transferred to the undersigned on January 6, 2022. See Doc. #23.

On March 11, 2022, defendants filed the instant Motion for Summary Judgment. See Doc. #30. Defendants provided plaintiff with a "Notice to Self-Represented Litigant Concerning Motion for Summary Judgment as Required by Local R. of Civ. Pro. 56(b)[.]" Doc. #30-3 at 1 (capitalization altered). The Court directed plaintiff's attention to that Notice, and advised him separately regarding the need to respond to defendants' motion. See Doc. #33. Plaintiff sought an extension of time to file a response, which the Court granted. See Doc. #35. On May 5, 2022, plaintiff filed a document without a caption or title, but which the Court has construed as his response to the motion for summary judgment. See Doc. #36. This document consists of a 38-page handwritten document, most of which is a timeline of issues related to plaintiff's medical conditions, and more than 200 pages of attachments, largely consisting of plaintiff's medical records. See id.

## II.  SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when "the movant shows that

3

there is no genuine dispute as to any material fact and the
movant is entitled to judgment as a matter of law." Fed. R. Civ.
P. 56(a). "The party seeking summary judgment has the burden to
demonstrate that no genuine issue of material fact exists."
Marvel Characters, Inc. v. Simon, 310 F.3d 280, 286 (2d Cir.
2002). The moving party may discharge this burden by "pointing
out to the district court ... that there is an absence of
evidence to support the nonmoving party's case." Celotex Corp.
v. Catrett, 477 U.S. 317, 325 (1986). "In moving for summary
judgment against a party who will bear the ultimate burden of
proof at trial, the movant's burden will be satisfied if he can
point to an absence of evidence to support an essential element
of the nonmoving party's claim." Goenaga v. March of Dimes Birth
Defects Found., 51 F.3d 14, 18 (2d Cir. 1995).

In deciding a motion for summary judgment, the Court "must
construe the facts in the light most favorable to the non-moving
party and must resolve all ambiguities and draw all reasonable
inferences against the movant." Beyer v. Cnty. of Nassau, 524
F.3d 160, 163 (2d Cir. 2008) (citation and quotation marks
omitted). "If there is any evidence in the record that could
reasonably support a jury's verdict for the non-moving party,
summary judgment must be denied." Am. Home Assur. Co. v. Hapag
Lloyd Container Linie, GmbH, 446 F.3d 313, 315 (2d Cir. 2006)
(citation and quotation marks omitted).

"[I]n a pro se case, the court must view the submissions by
a more lenient standard than that accorded to formal pleadings
drafted by lawyers. ... This liberal standard, however, does not
excuse a pro se litigant from following the procedural
formalities of summary judgment." Govan v. Campbell, 289 F.
Supp. 2d 289, 295 (N.D.N.Y. 2003) (citations and quotation marks
omitted). A plaintiff's "pro se status d[oes] not eliminate his
obligation to support his claims with some evidence to survive
summary judgment." Nguedi v. Fed. Rsrv. Bank of N.Y., 813 F.
App'x 616, 618 (2d Cir.), cert. denied, 141 S. Ct. 825 (2020).
"[A] pro se party's bald assertion, completely unsupported by
evidence is not sufficient to overcome a motion for summary
judgment." Hamilton v. Gen. Motors Hourly-Rate Employee's
Pension Plan, 101 F. Supp. 3d 202, 209 (N.D.N.Y. 2015) (citation
and quotation marks omitted).

Pursuant to the District of Connecticut Local Rules,

> [a] party opposing a motion for summary judgment shall
> file and serve with the opposition papers a document
> entitled "Local Rule 56(a)2 Statement of Facts in
> Opposition to Summary Judgment," which shall include a
> reproduction of each numbered paragraph in the moving
> party's Local Rule 56(a)1 Statement followed by a
> response to each paragraph admitting or denying the fact
> and/or objecting to the fact as permitted by Federal
> Rule of Civil Procedure 56(c).

D. Conn. L. Civ. R. 56(a)(2)(i) (emphasis added). When a party
fails to controvert a fact set forth in the opposing party's
Local Rule 56(a)(1) statement, it will be deemed admitted if it

is "supported by the evidence[.]" D. Conn. L. Civ. R. 56(a)(1).

## III. **FACTUAL BACKGROUND**

The following facts are derived from the parties' submissions and the affidavits, declarations, and exhibits attached thereto.

As noted, defendants provided the Local Rule 56(b) Notice to Self-Represented Litigant Regarding Summary Judgment, a copy of Local Rule 56, and a copy of Federal Rule 56, to plaintiff in conjunction with their motion for summary judgment. See Doc. #30-3. Despite this Notice, which explicitly informed plaintiff that he was required to "respond to specific facts the movant claims are undisputed (see Local Rule 56(a)(2))" and to "support [his] claims with specific references to evidence[,]" Doc. #30-3 at 2, plaintiff did not file a Rule 56(a)(2) Statement.

> The court is well aware ... that the submissions of a pro se litigant must be construed liberally and interpreted to raise the strongest arguments that they suggest. This policy of liberally construing pro se submissions is driven by the understanding that implicit in the right of self-representation is an obligation on the part of the court to make reasonable allowances to protect pro se litigants from inadvertent forfeiture of important rights because of their lack of legal training. On the other hand, pro se parties are not excused from abiding by the Federal Rules of Civil Procedure.

Wilks v. Elizabeth Arden, Inc., 507 F. Supp. 2d 179, 185 (D. Conn. 2007) (citations and quotation marks omitted).

Plaintiff was provided ample notice of the requirement to

file a Local Rule 56(a)(2) statement with his response to defendants' motion for summary judgment. See Cusamano v. Sobek, 604 F. Supp. 2d 416, 426 (N.D.N.Y. 2009) ("[T]he Court extends special solicitude to the pro se litigant largely by ensuring that he or she has received notice of the consequences of failing to properly respond to the motion for summary judgment." (emphasis added)); Wu v. Nat'l Geospatial Intel. Agency, No. 3:14CV01603(DJS), 2017 WL 923906, at *2 (D. Conn. Mar. 8, 2017) (noting that the self-represented plaintiff "was advised on two separate occasions of the need to comply with Local Rule 56 and specifically of the need to file a Local Rule 56(a)2 Statement" but had failed to do so, and therefore deeming the statements in the movant's Statement of Undisputed Facts admitted).

"[T]o the extent that [defendants'] factual assertions are properly supported by the evidence the Court will deem those assertions admitted." Wu, 2017 WL 923906, at *2; see also Otero v. Purdy, No. 3:19CV01688(VLB), 2021 WL 4263363, at *10 (D. Conn. Sept. 20, 2021) ("deem[ing] Defendants' 56(a)1 statements to be admitted as they are properly supported by the evidence[]" and the self-represented plaintiff did not file a Local Rule 56(a)(2) statement). However, to the extent that a material fact is refuted by plaintiff's response to defendants' motion for summary judgment, the Court will consider that fact disputed. See Wilks, 507 F. Supp. 2d at 185–86 ("For the purposes of this

motion, however, the court shall deem admitted all facts set
forth in the Defendant's compliant Local Rule 56(a)(1) Statement
that are supported by the evidence and not refuted by the
Plaintiff's opposition memorandum."). Accordingly, the Court
will deem all facts in defendants' Local Rule 56(a)(1) statement
that are supported by the evidence admitted, unless plaintiff's
submissions directly contradict them. If a material fact is
disputed, the Court will consider the evidence provided by the
parties to determine whether the dispute is <u>genuine</u>.

### A.    Allegations of the Complaint

The Complaint makes the following factual allegations. On
September 30, 2020, Cruz "showed Dr. Naqvi an infection I had on
my toe left foot from an ingrow nail." Doc. #1 at 5 (sic). The
infection "was very bad." <u>Id.</u> Dr. Naqvi did nothing to treat
this condition for at least two months, and Nurse Graham did
nothing to provide antibiotics or dressing changes. <u>See</u> <u>id.</u> Cruz
made complaints to the unit manager and others, including Nurse
Supervisor Furtick, Nurse Walker, RCOO Shea, and APRN Sarah. <u>See</u>
<u>id.</u> at 6. Over the course of a few months, plaintiff's toe
became swollen and discolored; he could not put his shoes on;
the infection was draining; he was in a great deal of pain; and
his foot was in such "bad condition that" he could have "lost a
toe." <u>Id.</u> "After almost 3 months Nurse Diana went to Dr. Naqvi
office and told him that he has to take care of my foot now. So

8

he [eventually] did it, thank to Nurse Diana." Id. (sic).

    **B.   DOC Administrative Remedy Procedure**

       Inmates incarcerated at Connecticut DOC facilities have access to the Health Services Review ("HSR") Policy outlined in Administrative Directive 8.9 ("A.D. 8.9"). See Doc. #30-2 at 9-11.[4] A.D. 8.9 establishes "a Health Services Review procedure as the administrative remedy for all health services to enable an inmate to seek formal review of any health care provision, practice, diagnosis or treatment." Doc. #30-8 at 7. Plaintiff does not dispute that A.D. 8.9 was in effect at the time of the incidents underlying his Complaint, nor that he was required to exhaust his administrative remedies pursuant to A.D. 8.9.

       "There are two types of Health Services Review[.]" Doc. #30-8 at 8-9. They are: "A. Diagnosis and Treatment. A review of diagnosis or treatment including a decision to provide no treatment, relating to an individual inmate. B. Review of an Administrative Issue. A review of a practice, procedure, administrative provision or policy, or an allegation of improper

---

[4] A.D. 8.9 was revised on April 30, 2021. See State of Connecticut Department of Correction, Administrative Directive 8.9: Health Service Administrative Remedies, (April 30, 2021), https://portal.ct.gov/DOC/AD/AD-Chapter-8. Plaintiff's Complaint concerns events allegedly occurring from September 2020 through no later than January 13, 2021, when the Complaint was filed. See Doc. #1; Doc. #10. Accordingly, all references to A.D. 8.9 in this Ruling refer to the version that was in effect from September 2020 through January 2021, which defendants have attached as Attachment 1 to Exhibit E. See Doc. #30-8 at 7-11.

conduct by a health services provider." Id. at 9. Plaintiff here complains that the defendants failed to provide adequate treatment for his foot condition; his claims therefore fall under "Diagnosis and Treatment." Id.

An "inmate must attempt to seek an informal resolution prior to filing for a Health Services Review." Id. An inmate may attempt informal resolution "face to face with the appropriate staff member or with a supervisor via written request utilizing CN 9601 Inmate Request Form." Id. Prison staff are required to respond to informal resolution requests "within 15 calendar days from receipt of the written request." Id.

If "informal resolution via inmate request was unsuccessful[,]" an inmate seeking review of a diagnosis or treatment "may apply for a Health Services Review" by submitting a "CN 9602 Inmate Administrative Remedy form[.]" Id. On that form, the "inmate shall check the 'Diagnosis/Treatment' box and explain concisely the cause of his/her dissatisfaction, and deposit the completed form in the Health Services Remedies/Review box." Id.

The HSR Coordinator maintains "[a] log of each Health Services Review request and appeal[.]" Id. at 10. The HSR Coordinator also maintains "[a] file of each Health Services Review request and appeal ... , containing copies of the forms that have been used in the review or appeal." Id. For any inmate

10

that has "applied for a Review of Diagnosis or Treatment[,]" the "health record" of that inmate must "contain a copy of the forms used in the Review, notations in the clinical record including a notation of 'HSR Administrative Remedy' appointment." Id.

Plaintiff has attached over 200 pages of records to his opposition. See Doc. #36. He attaches copies of 49 "special request forms" by which he requested that funds be disbursed for postage or copies between 2019 and 2022. See Doc. #36-1. He also attaches 200 pages of medical records, many of which he has annotated with his own comments. See Docs. #36-2, #36-3, #36-4, #36-5, #36-6. He does not attach any HSR forms.

## IV.  DISCUSSION

### A.  Applicable Law

The Prisoner Litigation Reform Act ("PLRA") provides: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. §1997e(a). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes[.]" Porter v. Nussle, 534 U.S. 516, 532 (2002).

"The Supreme Court has held that 'the PLRA exhaustion requirement requires proper exhaustion.' That is, 'prisoners

must complete the administrative review process in accordance with the applicable procedural rules -- rules that are defined not by the PLRA, but by the prison grievance process itself.'" Johnson v. Killian, 680 F.3d 234, 238 (2d Cir. 2012) (quoting Woodford v. Ngo, 548 U.S. 81, 93 (2006); and then quoting Jones v. Bock, 549 U.S. 199, 218 (2007)). "The PLRA's exhaustion requirement is designed to afford corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." Johnson v. Testman, 380 F.3d 691, 697 (2d Cir. 2004) (citation and quotation marks omitted).

"Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." Woodford, 548 U.S. at 90-91; see also Williams v. Comstock, 425 F.3d 175, 177 (2d Cir. 2005) ("[T]he failure to timely file the grievance in accordance with IGP rules amounted to a failure to exhaust administrative remedies in this case."). In this case, plaintiff's claims are against medical staff, alleging failure to provide care; he was therefore required to exhaust the administrative remedies made available to him under A.D. 8.9. See Carter v. Revine, No. 3:14CV01553(VLB), 2017 WL 2111594, at *14 (D. Conn. May 15, 2017) ("Directive 8.9 applies to [plaintiff's] claims against medical staff. Directive 8.9

12

provides formal review of any health care provision, practice, diagnosis or treatment[.]" (citations and quotation marks omitted)); Urbanski v. Dep't of Corr., No. 3:18CV01323(VLB), 2019 WL 6683047, at *2 (D. Conn. Dec. 5, 2019) (distinguishing between A.D. 8.9 and A.D. 9.6).

### B.   Analysis

Plaintiff has presented no evidence that he exhausted his administrative remedies as to these claims by filing any HSR regarding these issues. He does not argue that the administrative remedies of A.D. 8.9 were inapplicable, or that they were somehow unavailable to him.

Defendants have provided evidence that plaintiff did not exhaust his administrative remedies. Relevant to this issue, defendants assert the following undisputed material facts:

> 61. The health services administrative remedies process identified in AD 8.9 is the administrative remedy process all inmates must follow to seek formal review of any health care provision, practice, diagnosis, or treatment. Ex. E [Doc. #30-8] at ¶8.

> 62. A log of each Health Services Review request and appeal filed by an inmate is maintained by the HSARC, and, as the HSARC, Nurse Walker has access to this electronic log. Id. at ¶9.

> 63. The plaintiff filed no health services administrative remedy pursuant to Administrative Directive 8.9 between 2014 and February 2021. Ex. E at ¶10, Attachment 2.

> 64. The plaintiff filed no health services administrative remedy pursuant to Administrative Directive 8.9 related to any ingrown toenail issue prior

to January 13, 2021. <u>Id.</u>

Doc. #30-2 at 9-10. These facts are based on Nurse Walker's sworn affidavit, and the report of the Health Services database attached to that affidavit, showing that plaintiff filed HSR requests on February 28, 2014; February 18, 2021; and February 23, 2021. <u>See</u> Doc. #30-8 at 13. The report, as interpreted by Nurse Walker, confirms that plaintiff did not file any <u>other</u> HSR requests during that time frame.

Defendants have provided certain "Inmate Request Forms" submitted by plaintiff that do relate to his ingrown toenail. Those forms, known as CN9601 forms, are a mechanism for attempting informal resolution of inmate concerns. A.D. 8.9 requires that a form CN9602 Health Services Review form be submitted if an inmate is not satisfied with the attempt at informal resolution. <u>See</u> Doc. #30-8 at 9.

On October 7, 2020, plaintiff submitted an Inmate Request Form stating that he had a painful ingrown toe nail, and saying that he needed "to be seen ASAP." Doc. #31 at 440. On October 12, 2020, he submitted an Inmate Request Form stating: "I need ingrown nail to be cut off please. The antibiotic that they gave me for has worked a lot infection went away. APRN Sahra thank you[.]" Doc. #31 at 430 (sic). On October 16, 2020, he submitted another Inmate Request Form, stating: "I need my ingrown nail cut off." Doc. #31 at 437.

14

An inmate "cannot satisfy the PLRA's exhaustion requirement ... by making informal complaints[.]" Macias v. Zenk, 495 F.3d 37, 44 (2d Cir. 2007). The PLRA "requires proper exhaustion -- that is, using all steps that the agency holds out, and doing so properly." Amador v. Andrews, 655 F.3d 89, 96 (2d Cir. 2011) (citation and quotation marks omitted). Here, that requirement means that plaintiff was required to do more than submit CN9601 Inmate Request Forms. If he had a concern with his medical treatment (or lack thereof), plaintiff was required to avail himself of the process provided by A.D. 8.9. The undisputed evidence of record reflects that he did not do that.

There is no dispute of the material facts related to the exhaustion defense. Defendants have provided evidence showing that plaintiff failed to exhaust his administrative remedies. Plaintiff has neither contested that evidence nor even argued that he did exhaust his remedies, or that such remedies were unavailable to him. Summary judgment is therefore appropriate.[5]

## V.   CONCLUSION

The record establishes that plaintiff "failed to properly exhaust the administrative remedies available to him before filing suit in federal court[]" as to the claims asserted in

---

[5] The Court need not reach defendants' remaining arguments in support of summary judgment because the exhaustion issue is dispositive of all claims.

this Complaint. <u>Wilson v. McKenna</u>, 661 F. App'x 750, 753 (2d Cir. 2016). The PLRA requires exhaustion. Failure to exhaust available administrative remedies entitles defendants to summary judgment. <u>See</u>, <u>e.g.</u>, <u>Lev v. Thoms</u>, 853 F. App'x 767, 769 (2d Cir. 2021) (affirming grant of summary judgment for failure to fully exhaust administrative remedies under the PLRA); <u>Morales v. Dzurenda</u>, 383 F. App'x 28, 29 (2d Cir. 2010) (same).

Accordingly, and for the reasons set forth herein, defendants' Motion for Summary Judgment [**Doc. #30**] is **GRANTED, as to all defendants, as to all claims.**

Judgment shall enter in favor of defendants.

The Clerk shall close this case.

It is so ordered this 19th day of August, 2022, at Bridgeport, Connecticut.

    /s/<br>
HON. SARAH A. L. MERRIAM<br>
UNITED STATES DISTRICT JUDGE
